## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: PAULSBORO DERAILMENT CASES | Master Docket No. 13-0784 |
| Ronald J. MORRIS & Kristen PICKEL, | Civil No. 13-3244 (RBK) |
| Plaintiffs, | **CLERK'S ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO TAX COSTS** |
| v. |  |
| CONSOLIDATED RAIL CORPORATION, et al. |  |
| Defendants. |  |

This matter has come before the Clerk on the motion [Dkt. Entry 260] of Plaintiff Ronald J. Morris ("Plaintiff," "Morris") to tax costs against Defendant Consolidated Rail Corporation ("Defendant," "Conrail") pursuant to Fed. R. Civ. P. 54(d) and Local Civil Rule 54.1.  Defendant opposes this motion.

Plaintiff and his wife, Kristen Pickel, filed this diversity suit on May 23, 2013 [Dkt. Entry 1] against Conrail, CSX Transportation, Inc. ("CSX") and Norfolk Southern Railway Company ("Norfolk").  Morris sued for damages allegedly arising out of the release of vinyl chloride in the vicinity in which he was driving, caused by the derailment of train cars that occurred when the Paulsboro Bridge collapsed.  His wife sued for loss of consortium.  The complaint contained counts, on behalf of Morris, of negligence (I), gross negligence (II), strict liability (III), and medical monitoring (IV), and, on behalf of Kristin Pickel, of per quod (V).

This suit was just one of many filed in connection with the Paulsboro Bridge collapse and before it was filed, on February 8, 2013, the Court created a master docket, Civ. No. 13-784.

Most of the counts of the complaint were eliminated prior to trial in response to the defendants' motions to dismiss and for summary judgment. The strict liability claim was dismissed early, on October 4, 2013. [Dkt. Entry 16].[1] In August 2015, the Court granted several motions filed by the defendants [Dkt. Entries 73, 90, 94, 99] and dismissed Morris' and the many plaintiffs' claims for: medical monitoring/fear of cancer; negligence claims relating to the transportation of hazardous materials and the Paulsboro Bridge, training, discipline, and supervision; and punitive damages [Dkt. Entries 150, 152].

Prior to ruling on those motions, on August 4, 5 and 6, 2015, the Court conducted Daubert hearings to address the parties' motions to exclude a number of experts on either side. [Dkt. Entries 93, 96-98, 122]. As a result, the report and testimony of plaintiffs' liability experts, Stephen M. Timko, and Carl F. Morey, and plaintiffs' medical expert, Dr. Osinubi were excluded. [Dkt. Entry 137, 140].

On August 18, 2015, defendants CSX and Norfolk were dismissed [Dkt. Entry 148] upon the granting of their motions for summary judgment [Dkt. Entries 91, 92].

On October 16, 2015, the Court conducted a hearing on its order to show cause why this and other cases should not be dismissed for lack of subject matter jurisdiction. [Dkt. Entry 164]. Having previously dismissed the claims for medical monitoring and punitive damages, the Court questioned whether the various plaintiffs' claims could conceivably reach the $75,000 damages threshold necessary for diversity jurisdiction. On this particular case, the Court determined that it was "arguable that Morris could recover $75,000 in compensatory damages," noting, "[n]ot

---

[1] Unless otherwise noted, references herein are to the docket entries in the individual Morris case, Civ. No. 13-3244, rather than the master docket.

likely, but I mean I guess the jurors could award him that. So I'm not going to dismiss that." [Dkt. Entry 173] Tr. 21:1-4.  Accordingly, the order to show cause was dismissed that day. [Dkt. Entry 163].

In January 2016, the parties filed several more in limine motions to preclude certain types of evidence or testimony regarding Plaintiff's future medical treatment, previous problems at the Paulsboro Bridge, vinyl chloride exposure, fear of cancer, prior rule violations by the Conrail conductor, certain witnesses and to permit the use of videos and the NTSB factual reports. [Dkt. Entries 189-99]. Some motions were granted and others were denied on January 21, 2016. [Dkt. Entry at 217]. Relevant to the present motion, the Court denied Conrail's motion to preclude the plaintiffs from calling witnesses Neil Ferrone and Alan Richter. The plaintiffs' motion to admit the NTSB factual reports into evidence was denied without prejudice. Id.

A six day jury trial was conducted on January 26-29 and February 1-2, 2016. [Dkt. Entries 223, 225, 229, 232, 236, 239].

On February 1, 2016, before the verdict was rendered, Defendant filed a motion for judgment as a matter of law [Dkt. Entry 234] and that motion was denied [Dkt. Entry 236].

On February 2, 2016, the jury rendered a verdict in favor of Morris on his negligence claim, awarding him $500.00 in damages, and against Kristin Pickel on her claim of loss of consortium. [Dkt. Entry 242]. The final judgment reflecting the jury's split verdict was entered on February 3, 2016. [Dkt. Entry 243].

Conrail renewed its motion for judgment as a matter of law on March 1, 2016 [Dkt. Entry 249] and that post-trial motion was denied by court order filed on June 20, 2016 [Dkt. Entry 256].

On June 28, 2016, Plaintiff filed his initial application for the taxation of costs [Dkt. Entry 258], consisting of the AO 133 form, Affidavit of David M. Cedar, Esq., with supporting invoices attached, and certificate of service.  Noting deficiencies in the submission, on June 30, the Clerk allowed Morris' counsel a week to file a notice of motion and description of the use of the requested items.  [Dkt. Entry 259].  In response, and still within 30 days of the filing of the order on the post-trial motion, on July 1, Plaintiff filed his motion complying with our local court rule and governing federal statute.  [Dkt. Entry 260].

In his July 1 papers, Morris requested the costs of:  filing the complaint ($400.00); service of subpoena ($114.95); printed transcripts of 29 depositions ($25,046.47); hearing transcripts ($1,384.05); witness fees ($40.00); photocopies ($203.42); and Lawyer's Service ($7.90); or a total of $27,196.79.

In its opposition [Dkt Entry 263], Conrail objected that "it does not appear that the costs of the general fact witness depositions in the derailment litigation were appropriately divided among the various plaintiffs' attorneys, or even among those plaintiffs represented by counsel for these Plaintiffs."  Def.'s Opp. at 7 (footnote omitted).

Upon examining the master docket and dockets for the individual Paulsboro Derailment cases, the Clerk learned that the Cedar and/or Williams Cuker Berezofsky firms represented a number of unsuccessful plaintiffs in addition to these plaintiffs. [2]  Therefore, on November 16, 2016, the Clerk wrote to Mr. Cedar to allow him to supplement his client's application with evidence of costs charged to these plaintiffs by the Cedar Law Firm and Williams Cuker

---

[2]   Despite defense counsel's inference, Def.'s Opp. at 7-8, the Clerk finds no evidence in the dockets that the requested costs were apportioned among the various Plaintiffs' counsel.

Berezofsky, and not charged to other plaintiffs represented by those firms. [Dkt. Entry 271]. The Clerk advised counsel that "[t]hrough his motion to tax, Mr. Morris may recoup just the taxable costs incurred by him and not those incurred by non-prevailing parties in other cases." The cost-shifting provision in Fed. R. Civ. P. 54(d) (1), carved out as an exception to the American rule, was enacted to compensate a prevailing party, not to provide it a windfall.

In response, Plaintiff's counsel filed a revised bill of costs, showing a new total of $11,598.48. [Dkt. Entry 272]. With the other items remaining the same, the requested cost of deposition transcripts, now based upon 11 depositions, was reduced from $25,046.47 to $9,448.16. Affidavit of David M. Cedar, Esq. ("Cedar Aff.") [Dkt. Entry 272-1]. Of those transcripts, nine were charged at 100% to Morris and two were split 50/50 with plaintiff Breeman from another case. Morris requests just the 50% cost of the two shared transcripts.

Meanwhile, on July 19, 2016, the plaintiffs appealed to the United States Court of Appeals for the Third Circuit from this Court's orders on several partial summary judgment and in limine motions as well as the admission of testimony and exclusion of evidence during the trial. [Dkt. Entry 266]. Conrail's cross-appeal followed on July 29, 2016. [Dkt. Entry 268]. Defendant appealed from the Court's order denying its renewed motion for judgment as a matter of law. Those appeals are still pending.

### I. Legal Standards

Morris makes this application pursuant to Fed. R. Civ. P. 54(d) (1), which states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." A prevailing party is "one in whose favor a judgment is rendered, regardless of whether the party has recovered its entire claim or a

portion thereof." Garonzik v. Whitman Diner, 910 F. Supp. 167, 168 (D.N.J. 1995) (citing Fahey v. Carty, 102 F.R.D. 751 (D.N.J. 1983)).

There is such a strong presumption that costs should be awarded to the prevailing party that, "'[o]nly if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.'" Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli R.R.Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)).

Absent express statutory authorization, a district court or clerk deciding a Rule 54(d) taxation motion may grant only those types of costs set forth in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).

Furthermore, despite the "venerable presumption that prevailing parties are entitled to costs," Marx v. Gen. Revenue Corp., 133 S. Ct. 1166, 1172 (2013), the Supreme Court has cautioned that § 1920 must be narrowly construed. Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560 (2012). In the Taniguchi case, our highest court limited the "compensation of interpreters" in § 1920 (6) to the cost of oral translation, to the exclusion of the cost of document translation. While this particular subsection of § 1920 is not at issue here, the Clerk is cognizant of the restrictive approach that must be taken in ruling on taxation motions.

Also, the prevailing party must present sufficient information to carry its burden of showing that the costs sought fall within § 1920.  Romero v. CSX Transp., Inc., 270 F.R.D. 199, 201-02 (D.N.J. 2010).

The Clerk's decision herein is further guided by our local court rule, L. Civ. R. 54.1, which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920.  Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2017 ed.) at 264.

Conrail disputes Morris' status as the "prevailing party" but does not raise any procedural irregularities of his motion.  Plaintiff's applications, both original and revised, were filed within the time frame allowed under L. Civ. R. 54.1(a) and satisfy the verification requirement of 28 U.S.C. § 1924, mirrored in L. Civ. R. 54.1(b).  Defendant has also filed and served a bill of costs, notice of motion and supporting invoices, as required under our local rule.

Before examining the particular costs, the Clerk addresses Conrail's argument that the plaintiffs are not entitled to costs because they are not the prevailing parties.[3]

## II.     Morris' Status as the Prevailing Party

Citing a Seventh Circuit case, Conrail contends that a litigant must have succeeded "as to the substantial part of the litigation" in order to earn prevailing party status.  Def.'s Opp. at 2.  Its position can be summed up as follows:

---

[3]     Defendant's opposition focuses on both plaintiffs but this application is being made on behalf of Morris only, not Kristin Pickel, as is evident from the AO 133 forms [Dkt. Entries 258, 260-1, 272] and the body of the Cedar Affidavits, despite the reference in the title of the Affidavits to "Plaintiffs' Bill of Costs" and "Plaintiffs' Supplement."  [Dkt. Entries 258-1, 260-2, 272-1].  Kristin Pickel is not a prevailing party as judgment was rendered against her.

> Plaintiff, Ronald Morris, was only partially successful in this litigation, and Plaintiff Kristen Pickel did not prevail at all on her claim. Further, Mr. Morris can hardly be said to have been successful on the one of five counts that survived, as he recovered less than one percent (0.6%) of the amount sought in the Complaint.

Id.

Such is not the law in the Third Circuit. Our circuit court has clearly stated that the limited nature of a plaintiff's success does not justify the penalty of a denial of costs. Inst. Juveniles v. Sec'y of Public Welfare, 758 F.2d 897, 926 (3d Cir. 1985). In that civil rights case, the plaintiffs were held to be prevailing parties for the purposes of awarding both attorney's fees and costs, even though their legal claims were mooted and judgment was entered in favor of defendants. The Third Circuit so held because some of the relief that plaintiffs sought in bringing suit was obtained through state regulatory reform as a result of the litigation. However, the circuit court reversed the district court's denial of costs to plaintiffs based upon the limited nature of their success. It ruled that the lower court abused its discretion, stating that "unless there is a showing on remand that plaintiffs needlessly prolonged or complicated the litigation, resulting in unjustifiable costs, the court must enter judgment for cost in favor of plaintiffs." Id.

More recently, the Third Circuit distinguished between the effect that a prevailing party's limited success has on attorney's fees as opposed to taxable costs. Carroll v. Clifford Tp., 625 F. App'x 43 (3d Cir. 2015). In that § 1983 case, the plaintiff won a judgment in his favor but only nominal damages and the trial court denied him both attorney's fees and costs. The appellate court affirmed the lower court's denial of attorney's fees but vacated its denial of costs, explaining that "[a]lthough [the prevailing party's] limited success may justify denial of attorney's fees, it is insufficient to justify denying him his costs.' Id. at 47.

-8-

The Clerk appreciates Defendant's displeasure with paying thousands of dollars in requested costs in the face of Morris' $500.00 verdict. However, to the extent that Defendant is arguing that a reduction in costs must be made (as opposed to a complete denial), based upon Morris' limited success, Conrail has not shown that the successful and unsuccessful claims were unrelated. In other words, a reduction is inappropriate if all the claims were interconnected, sharing a common core of facts, and the costs incurred cannot be assigned to the successful versus the unsuccessful claims. As the court stated in Schwartz v. Rent-A-Wreck of Am., "[t]he presumption is *not* that a prevailing party is entitled only to partial costs which can be tied directly to a successful claim." Civ. No. PJM 07-1679, 2016 WL 3906581, at *4 (D.Md. July 14, 2016). The court there found that "the costs actually taxed by the Clerk of Court . . . would be nearly impossible to parse or assign to [prevailing party's] successful or unsuccessful claims, especially in light of the fact that [prevailing party's] claims were all interrelated." In light of the fact that Conrail has not shown that particular costs were incurred solely due to the unsuccessful claims, the Clerk rejects a reduction in costs.

The Clerk also appreciates the fact that the Court itself questioned the feasibility of attaining the $75,000 threshold of diversity jurisdiction, scheduling an order to show cause, and he is cognizant of the existence of 28 U.S.C. § 1332 (b). That statute provides:

> Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

Nonetheless, to the Clerk's knowledge, that statutory provision has not been invoked in this case and in any event, it provides action that the district court may take, not the Clerk.

In light of the foregoing, the Clerk refuses to deny or reduce Morris' cost award based upon his limited success. Accordingly, each of the requested items will be considered in the order in which they appear in § 1920.

### III. Fees of the Clerk and Marshal, § 1920 (1)

The first item shown on Morris' bill of costs is the $400 fee for filing his complaint. When Plaintiff filed his complaint in 2013, the fee required under 28 U.S.C. § 1914(a) for filing a civil action was $400.00 and the docket indicates that he paid that fee. [Dkt. Entry 1]. This unopposed $400.00 fee is allowed under § 1920 (1) as a fee of the clerk.

A second § 1920 (1) cost, a private process server's $114.95 charge for serving a trial subpoena on Thomas Bilson, is requested as a fee of the marshal. [Dkt. Entry 272-1 at 17]. Section 1920(1) explicitly authorizes taxation of the costs of just the "clerk and marshal." However, this Court has held that the fees of private process servers are taxable under the combined reading of § 1920 and § 1921, which allows the court to tax as costs the fees for serving a subpoena on a witness. Ricoh Corp. v. Pitney Bowes Inc., Civ. No. 02-5639, 2007 WL 1852553, at *3 (D.N.J. June 26, 2007); Hurley v. Atlantic City Police Dep't, Civ. Nos. 93-260, 94-1122, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996). Therefore, the Clerk taxes this unopposed cost as well. Combining this cost with the allowed filing fee, a total of **$514.95** is taxed pursuant to § 1920 (1).

### IV. Fees for Printed Transcripts, § 1920 (2)

As noted earlier, Mr. Cedar has clarified that the cost of deposition transcripts incurred by these plaintiffs was $9,448.16, not the $25,046.47 originally requested. [Dkt. Entry 272-1 ¶3]. Under this §1920 (2) category, he also asks for the $1,384.05 cost of hearing transcripts. Id.

*Printed Deposition Transcripts*

In his most recent affidavit, Mr. Cedar attests that the costs listed therein "reflect[s] true and correct apportionments that are being charged to Mr. Morris only and no other plaintiff represented by Cedar Law Firm or Williams Cuker Berezofsky." [Dkt. Entry 272-1 at 1]. That averment would seem to take care of Conrail's objection that "counsel for Plaintiffs is trying to recoup all of its costs related to the derailment litigation, instead of properly limiting its recovery to this case." Def.'s Opp. at 3.

The transcript costs now sought to be taxed arise out of the depositions of: plaintiffs Morris and Pickel ($1,061.61); Defendant's psychological expert, Dale E. Panzer, M.D. ($816.00); Conrail conductor, Wilbert Den Ouden ($432.60); Conrail engineer, Mark Mather ($661.20); Plaintiff's expert, David A. Raush, Ph.D. ($895.30); Plaintiff's medical expert, Omowunmi Osinubi, M.D. (at 50%, $358.45); Defendant's medical expert, Dr. Michael Greenberg ($1,098.25); Conrail Risk Management Officer, Allen Richter ($1,458.25); Conrail Chief Risk Officer, Neil Ferrone ($1,444.00); and Defendant's medical expert, Dr. Douglas Weed (at 50%, $412.50).

Defendant did not file a response to Mr. Cedar's latest affidavit, but in response to the initial bill of costs, it agreed to taxing the full cost of the transcripts of the plaintiffs' and Dr. Raush's depositions, and to partial costs of the deposition transcripts of Drs. Panzer and Greenberg. [Dkt. Entry 263-1, Ex. A]. However, Conrail objected to taxing any of the transcript costs of the remaining six depositions. Id.

Morris' paring down of his deponent list from 27 to 11 witnesses eliminates the need to address Defendant's objections that "most were not actual, or even potential witnesses in this

-11-

case" and that "their testimony ha[d] no relevance to the Morris case." Def.'s Opp. at 5. Conrail's other general objections, i.e., that the transcripts were not "used at the trial," as required under L. Civ. R. 54.1(g)(7), or "necessarily obtained," as required under § 1920 (2), are no longer relevant as they were directed to transcripts eliminated in Morris' revised request. Id. at 5-6.

Regarding the depositions of plaintiffs, Drs. Panzer, Raush, and Greenberg and Den Ouden, Mather, Richter and Ferrone, Conrail concedes that the transcripts were used at the trial. Id. at 6. The trial minutes confirm that these witnesses either testified live at the trial or their deposition transcripts were read into the record. [Dkt. Entries 225, 229, 232, 236]. Defendant's objection that the requested costs do not reflect apportionment among the various plaintiffs represented by the Cedar and Williams Cuker Berezofsky firms or among the various plaintiffs' attorneys is no longer valid in the face of the averments of the most recent Cedar Affidavit. The Clerk determines that all of those nine transcripts were "necessarily obtained" within the meaning of § 1920 (2) and their costs will be taxed to the extent discussed below.

This leaves just the costs of the Osinubi and Weed depositions, shared equally with the Breeman plaintiffs, against which Conrail interposes specific objections. It protests that Dr. Osinubi was excluded as plaintiffs' expert upon its Daubert motion and that its medical expert, Dr. Weed was not even listed on the final pretrial order as a potential witness. Id.

Conrail correctly notes the "used at the trial" language of L. Civ. R. 54.1 (g)(7). However, that standard is liberally, not literally, applied. Courts throughout the country employ the test of whether the depositions "appear[ed] reasonably necessary to the parties in light of a particular situation existing at the times they were taken," regardless of whether the depositions

-12-

were used at the trial.  See, e.g., Thabault v. Chait, Civ. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan. 7, 2009).

Regarding Dr. Weed, it is true that he was not listed on the Joint Final Pretrial Order as a potential witness.  [Dkt. Entry 218].   Nevertheless, Defendant did use him as a medical expert prior to trial to testify at the Daubert hearing, in support of Defendant's motion to exclude Dr. Osinubi.  [Dkt. Entry 141]; Master Dkt. No. 13-784 [Dkt. Entry 970, Tr. 4:25-5:10].  Accordingly, it would have been necessary for Plaintiff to obtain Dr. Weed's transcript to prepare for Conrail's Daubert motion.

Finally, Conrail asks the Clerk to deny the costs of Dr. Osinubi's transcript because she was excluded as Plaintiff's expert as the result of Conrail's Daubert motion.  [Dkt. Entry 140].  Defendant's point is based upon hindsight.  Under the broader standard enunciated above, the Clerk finds that Dr. Osinubi's deposition would have appeared reasonably necessary at the time it was taken.  As in the case of Right of Way Maint. Co. v. Gyro-Trac, Inc., the Clerk finds that Morris reasonably expected to use Dr. Osinubi's testimony at trial even though she did not actually testify due to a Daubert objection.  Civ. No. H-05-4081, 2007 WL 2288047, at *2 (S.D.Tex. Aug. 6, 2007).  Additionally, during the Daubert hearing, Conrail used and submitted the transcript of Dr. Osinubi's June 26, 2015 deposition, Master Dkt. No. 13-784 [Dkt. Entry 970, Tr.139:5-12], and therefore, Conrail itself found it reasonably necessary as well.  Courts have taxed the cost of deposition transcripts used in support of and in opposition to Daubert motions.  Buccellati Holding Italia SPA v. Laura Buccellati LLC, No. 13-21297-CIV, 2015 WL 11202358, at *9 (S.D.Fla. Mar. 10, 2015) (citing Responsible Me, Inc. v. Evenflo Co., Inc., No. 06-61736-CIV, 2009 WL 528247, at *8 (S.D.Fla. Mar. 2, 2009)).

The Clerk finds that all 11 transcripts were necessarily obtained but must still address Conrail's last point that the requested costs are over-inclusive. Def.'s Opp. at 8-9. It is correct that the costs awarded should not include those for postage and delivery, travel, and color photographs and a rough draft not shown to be necessary. The Clerk routinely denies such costs as attorney conveniences, taxing instead just the cost of the original and a certified copy of the transcripts, as well as fees for reporter attendance. See e.g., Prometheus Labs., Inc. v. Roxane Labs., Inc., Civ. Nos. 11-230, 11-1241, 2016 WL 1559144, at *7 (D.N.J. Apr. 18, 2016). In light of the above, the following deposition transcript costs are taxed:

| **Deponent** | **Taxed Amount** |
|---|---|
| Kristin Pickel | $ 513.20 |
| Ronald Morris | $ 548.40 |
| Dale E. Panzer, M.D. | $ 741.00 |
| Wilbert Den Ouden | $ 406.35 |
| Mark Mather | $ 623.70 |
| David A. Raush, Ph.D. | $ 895.30 |
| Omowunmi Osinubi, M.D. | $ 358.45 |
| Dr. Michael Greenberg | $1,486.75 |
| Allen Richter | $1,458.25 |
| Neil Ferrone | $1,444.00 |
| Dr. Douglas Weed | $  412.50 |
| Total: | $8,887.90 |

Deposition transcripts are taxed in the total amount of **$8,887.90**, pursuant to § 1920 (2).

*Hearing Transcripts*

Morris' request for the $1,384.05 cost of hearing transcripts covers eight separate proceedings. [Dkt. Entry 272-1, ¶4cc.-jj.]. Conrail agrees to the full cost of three transcripts and the reduced cost of a non-expedited fourth transcript but objects to taxing any costs of the remaining four transcripts. Def.'s Opp. at 9-10.

Our relevant local rule, L. Civ. R. 54.1(g) (6), cited by Conrail, provides:

> The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge to be reduced to a formal order, or (C) if required for the record on appeal. . . Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the Court. All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

And, indeed, as noted by Conrail, Morris relies upon subsection (B) above to support its request for each of the eight transcripts. Mr. Cedar avers that "[t]he cost of the Hearing Transcript dated [____] was necessarily incurred in this action for purposes of understanding the Judge's ruling to be guided for trial, as the Judge never wrote an opinion on the issues decided." [Dkt. Entry 272-1, ¶4cc.-jj.].

The controlling provision of § 1920 (2) renders taxable the fees for printed transcripts which are "necessarily obtained for use in the case." The question, then, is whether these transcripts were necessarily obtained, e.g., for one of the purposes set forth in our local rule, or rather, whether they merely served the convenience of Plaintiff's counsel.

The three uncontested transcripts arise out of the August 5 and August 6, 2015 Daubert hearings and the August 20, 2015 hearing on defendants' motion for partial summary judgment on the negligence and punitive damages claims. These were significant proceedings in the

-15-

history of this case and the Court's orders disposing of those matters reference the hearing transcripts, providing, "for the reasons expressed on the record at that hearing." [Dkt. Entries 138, 140, 152]. Clearly, these transcripts were necessarily obtained and their costs of **$187.20**, **$314.40** and **$121.20** will be taxed.

Regarding the August 4, 2015 Daubert hearing, during which the Court granted defendants' motion to exclude plaintiffs' experts Timko and Morey, Conrail agrees to taxing the transcript but not at the full $485.00 cost requested by Morris. Def.'s Opp. at 10. Those 100 pages were charged at the expedited rate of $4.85 per page and yet, as Defendant correctly notes, Morris has not shown the need for expedition. Accordingly, the Clerk agrees with Conrail's suggestion to tax this transcript at the ordinary rate of $1.20 per page, applied to the other Daubert transcripts, or **$120.00**.

Over Conrail's objection, the Clerk finds that a fifth transcript, that of the July 16, 2015 status conference, warrants taxation. While there is no corresponding oral opinion that arose from that conference, the Court discussed a number of different procedures that would apply in the bellweather cases, including this Morris case, concerning evidence, the modified struck jury system to be used, the Court's handling of punitive damages, the Daubert motions and more. Master Dkt. No. 13-784 [Dkt. Entry 899]. In fact, the Court stated a third of the way through the conference, "That's a lot of information. What questions do you have about the trial?" Id., Tr. 13:16-17. This transcript was necessarily obtained and its **$45.60** cost will be taxed.

This leaves the transcripts of the September 9, 2015 settlement conference, the October 16, 2015 order to show cause hearing, and the December 16, 2015 hearing on plaintiffs' motions for sanctions and to vacate partial summary judgment on the negligent

training claim. The Clerk did not review the settlement conference transcript as it was sealed, but Mr. Cedar's stated need of understanding the Judge's ruling does not apply. The Clerk did read the other two transcripts [Dkt. Entries 173, 187] and agrees with Defendant that simple note-taking by counsel would have sufficed. Failing his burden of establishing the necessity of these three transcripts, Morris is denied their cost.

In sum, the hearing transcripts are taxed in the amount of **$788.40** ($187.20 + $314.40 + $121.20 + $120.00 + $45.60). Combining that number with the $8,887.90 cost of deposition transcripts, the total cost of transcripts granted pursuant to § 1920 (2) is **$9,676.30**.

### V.      Witness Fees, § 1920 (3)

The **$40.00** fee requested for the appearance of Dr. David Raush at trial [Dkt. Entry 225], is unopposed and allowed under § 1920 (3), 28 U.S.C. § 1821(b) and L. Civ. R. 54.1(g) (1), and is therefore taxed.

### VI.     Costs of Making Copies, § 1920 (4)

The penultimate cost is described by Mr. Cedar as the $203.42 charge for photocopying the "NTSB factual reports that Plaintiffs intended to move into evidence at trial." [Dkt. Entry 272-1, ¶5a.].

Conrail objects on the ground that Morris fails to satisfy the conditions of our local court rule, L. Civ. R. 54.1(g) (9). Def.'s Opp. at 11. That rule specifies:

> The fees for exemplification and copies of papers are taxable when (A) the documents are admitted into evidence or necessarily attached to a document required to be filed and served in support of a dispositive motion, and (B) they are in lieu of originals which are not introduced at the request of opposing counsel.

Notwithstanding the requirements of L. Civ. R. 54.1(g) (9), the Clerk adopts the broader application of § 1920 (4) over the limiting provisions of our local rule. Section 1920 (4)

provides that the costs of making copies of any materials are taxable where the copies are "necessarily obtained for use in the case." This Court has previously allowed the taxation of the costs of copies without strict adherence to the dual requirements of L. Civ. R. 54.1(g) (9), although only to the extent consistent with § 1920 (4). Hurley, 1996 WL 549298, at *3 n.5. See also Thabault, 2009 WL 69332, at *13-14; Reichhold, Inc. v. U.S. Metals Ref. Co., Civ. No. 03-453, 2009 WL 3761828, at *4 (D.N.J. Nov. 6, 2009).

So the question then is whether Morris has shown that the copies were necessarily obtained for use in the case. The Clerk cannot find so. Plaintiffs' motion to admit the NTSB factual reports into evidence was denied without prejudice, just prior to the trial, on January 21, 2016. [Dkt. Entry 217]. The Staples receipt is dated January 28, 2016, the third day of the trial and yet, Mr. Cedar has not indicated that he succeeded during the trial in having the reports moved into evidence. Accordingly, he has not shown that the copying was necessary.

Moreover, the Staples receipt lists a per item charge of $.53 for 6 units of "1-50 CLR STD" and of $.93 for 201 units of either "1-50 CLR2 STD" or "51-100 CLR2 STD." [Dkt. Entry 272-1 at 54, Ex. LL]. With 97% of these items charged at the rate of $.93, it is hard to believe that these invoice descriptions refer merely to photocopies, or even color copies. They may include items such as protective sheets, binding and the like, but such items are in the nature of attorney overhead and their costs are non-taxable. See e.g., Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc., Civ. Nos. 08-6304, 09-2073, 09-1233, 2013 W1876441, at *12 (D.N.J. Apr. 18, 2013) (citing Yong Fang Lin v. Tsuru of Bernards, LLC, Civ. No. 10-2400, 2011 WL 2680577, at *5 (D.N.J. July 8, 2011); Laura P. v. Haverford School Dist., Civ. No. 07-5395, 2009 WL 1651286, at *9 n.10 (E.D.Pa. June 12, 2009); Close–Up Int'l, Inc. v. Berov, Civ. No. 02-CV-2363, 2007 WL 4053682, at *11 (E.D.N.Y. Nov. 13, 2007)).

For the foregoing reasons, this cost is denied.

### VII.   Cost of Lawyer's Service

Conrail does not object to the final cost sought, the $7.90 charge for Lawyer's Service. Nonetheless, the Clerk denies this cost because the costs of shipping and handling are not recoverable in this district. Boyadjian v. Cigna Cos., 994 F.Supp. 278, 281 (D.N.J.1998) (denying costs of postage because they are not listed in § 1920); Bollitier v. Int'l Bhd. of Teamsters, 735 F.Supp. 623, 629 (D.N.J.1989) (denying taxation of costs of mailing); Hurley, 1996 WL 549298, at *4 (postage, delivery and messenger services fall under attorney's fees, not § 1920).

### VII.   Conclusion

In conclusion, the Clerk taxes the following costs in favor of Plaintiff and against Defendant:

| | |
|---|---|
| Fees of the clerk and marshal, § 1920 (1): | $    514.95 |
| Fees for printed transcripts, § 1920 (2): | $ 9,676.30 |
| Witness fees, § 1920 (3): | $      40.00 |
| **TOTAL:** | **$10,231.25** |

For the reasons set forth above, Plaintiff's motion to tax costs against Defendant is hereby granted in part and denied in part and Judgment is entered in favor of Plaintiff **Ronald J. Morris** and against Defendant **Consolidated Rail Corporation** in the amount of **$10,231.25**.

WILLIAM T. WALSH, CLERK

By:  S/John T. O'Brien
         Deputy Clerk

February 21, 2017